Thomas Lloyd SCRUGGS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

April 11, 1978.

Rehearing Denied May 23, 1978.

Robert E. Harrison, David Goin, III, Scottsville, James S. Patrick, Nashville, Tenn., for appellant.

Robert F. Stephens, Atty. Gen., John W. Stewart, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

On February 5, 1976, the Grand Jury of Allen County, Kentucky, returned an indictment against the appellant for "the offense of murder by shooting Martha Louise Scruggs with a high powered rifle." KRS 507.020(1)(a). After an eight-day trial the appellant was found guilty of murder and his punishment fixed at 20 years' imprisonment. On this appeal the appellant claims sixteen prejudicial errors.

James and Martha Scruggs had been married for twelve years and had four children, ages 12, 11, 10 and 6. They lived on a farm in the "Settle" community of Allen County, Kentucky. Their married life was not one of comfort and bliss, but rather was a bed of thorns and turmoil. They had separated on more than one occasion, once in the summer of 1975 for about three months. Each of them was finding more pleasure in the company of others, Martha with her paramour and the appellant with his girlfriend. On July 3, 1975, Martha filed a suit for divorce. However, the parties were reconciled in September, 1975, and the divorce suit was dismissed on September 22, 1975. On December 2, 1975, Martha went to her lawyer's office to reinstate her divorce suit, and on December 3, 1975, she disappeared and was not seen thereafter until her dead body was found in a cave on December 14, 1975.

**408**

Appellant's first complaint is that the trial judge, in limiting his interrogation of the chief Commonwealth witness Jerry Fann, violated his constitutional right of confrontation. Fann was called as a Commonwealth witness and his presence and participation are evident from the time of Martha's disappearance to the conclusion of the trial. It was Fann who found the victim's corpse. It was Fann who located a tree that had been split by a shot from a high-powered rifle. Fann owned and was in possession of the rifle that was proven to be the murder weapon. Fann was the victim's lover. In an attempt to impeach Fann's testimony, counsel for appellant inquired as to Fann's relationship with the victim. Specifically, counsel asked Fann whether he and the victim had ever engaged in sexual intercourse. At this point the Commonwealth objected, but before the court could rule on the subject Fann responded to the query in the affirmative. The court then sustained the objection and admonished the jury to disregard the witness' answer. From these basic facts the appellant asserts that his constitutional right to confrontation was abridged.

A cursory examination of the record shows this supposition to be without merit. Counsel for appellant conducted an exhaustive cross-examination, consuming over 35 pages in the record. Counsel effectively exposed Fann's relationship to the appellant and to the victim. In a recent opinion this court refused to recognize a Sixth Amendment violation of the right to confrontation when an eyewitness for the prosecution declined to answer a question on cross-examination that was intended to impeach his powers of observation. *Kendricks v. Commonwealth*, Ky., 557 S.W.2d 417 (1977). The failure of a trial court to admit into evidence one question and answer that is designed to impeach a witness will not give rise to an error of constitutional magnitude, absent unusual circumstances. Assuming arguendo that the proposed question was within the scope of cross-examination, we do not think the denial to ask such a question was prejudicial since it constituted only a minute part of the impeachment effort.

The appellant's second assignment of error also concerns the attempt by counsel to impeach the testimony of Jerry Fann. Fann had been convicted of auto theft some seventeen years prior to the trial of this case. The appellant sought to introduce evidence of this prior felony conviction, but was prohibited from doing so by the trial court. Normally this type of impeachment is proper; however, we observed in *Cotton v. Commonwealth*, Ky., 454 S.W.2d 698 (1970), that the trial court may exclude evidence of prior convictions if the court deems the conviction so remote as to have no bearing on credibility. The appellant asserts that remote felony convictions are subject to exclusion only when the defendant is testifying and that the rule is not applicable to other witnesses. We recognize that the danger of prejudice may be unusually acute when the accused has taken the stand in his own behalf; nevertheless, the rule applies evenhandedly to all witnesses. *Bell v. Commonwealth*, Ky., 520 S.W.2d 316 (1975). Since the rule was properly applied in this case, there is no error, absent an abuse of judicial discretion. Our examination of the record shows no such abuse.

Appellant's third and fourth assignments of error are predicated upon the assertion that Marlene Shields, secretary to the victim's attorney, was allowed to testify to matters that should have been excluded under the hearsay rule. The record shows that counsel for the appellant withdrew his objection and thus this matter is not preserved for review. RCr 9.22; *Bell v. Commonwealth*, Ky., 473 S.W.2d 820 (1971).

For his fifth assignment of error the appellant claims that the trial court improperly allowed into evidence threats against the victim attributed to the appellant and made approximately seven months prior to the disappearance of the victim. It is the appellant's contention that this evidence was so remote as to have no probative value.

A party was given by Jerry Fann in either May or August, 1975, to which Thom-

as and Martha were invited and were in attendance. Martha became staggering drunk and appellant made two threats against her life. In the presence of several women, but not in the hearing of Martha, he said, " * * * well I am getting rid of her; one way or the other I am going to get rid of her." The other threat was, " * * * I am going to kill that bitch. One way or the other I am going to kill her, I am going to kill her * * *."

We cite, with approval, 29 Am. Jur.2d, Evidence, Sec. 253, at page 305, wherein it says:

" * * * However, that a fact is remote in point of time or probative value does not of itself preclude its admissibility, but its admissibility depends to a large extent on the nature and circumstances of the case, and rests largely in the discretion of the trial court. Where evidence relates to matters too remote in point of time or to matters too far removed from the scene of the transaction, it is not admissible. In effect, the objection that evidence is too remote goes to the credibility of the evidence rather than to its admissibility, unless the remoteness is so great that the proffered evidence has no probative value at all."

We believe this evidence to be competent and, as such, we do not believe that it was so remote as to mandate exclusion. *Shumate v. Commonwealth*, Ky., 433 S.W.2d 340 (1968).

Next, the appellant asserts that the trial court erred by excluding statements allegedly made by the victim on the weekend prior to her disappearance. By way of avoval we are informed that the witness, if allowed to testify, would have stated that the victim had said she would leave her husband and would take no belongings other than the clothes on her back. Also, the appellant argues that the court erroneously prohibited the introduction of the contents of a note which the victim had allegedly written. The appellant testified that on the day of Martha's disappearance he returned home from a trip to Scottsville, Kentucky, and found a note which she had written to him, which allegedly said that she had gone to Nashville, Tennessee, with friends. At the time of the trial the note was reported to have been lost; at least it was not produced at the trial.

The court ruled that evidence relating to the statements allegedly made by the victim on the weekend prior to her disappearance and evidence relating to the contents of the note were hearsay and refused to permit any testimony relating thereto to be introduced. The note, if actually there was such a note, at the most would indicate an intention to go to Nashville. Any other inference would be highly speculative. Assuming that the note did exist and that its contents did express an intention on the part of Martha to go to Nashville and further assuming that the appellant was telling the truth about the note, there is no proof that Martha did go to Nashville, only appellant's testimony that he had a telephone conversation with her in which she said she was in Nashville, thereby lifting himself by his own bootstraps.

Declarations which declare an intent to do a particular thing have been deemed admissible as an exception to the hearsay rule where they possess a high degree of trustworthiness, where they are relevant to an issue in the case, and the declarant is dead or otherwise unavailable. *Todd v. Commonwealth*, Ky., 511 S.W.2d 239 (1974). In the instant case the verbal statements and the contents of the written note were hearsay. To be admissible they must come within the exception to the hearsay rule. In 29 Am.Jur.2d, Evidence, Sec. 651, it is stated, and was quoted in *Todd v. Commonwealth*, supra:

"Where the intent with which a party performed an act is a disputed fact in a case or a material element of such a fact, declarations made by the party after, as well as before, such act, that indicate the intent with which he performed it, are admissible in evidence as an exception to the hearsay rule. However, such a declaration of intent is not admissible in the absence of proof of performance of the act to which it relates, * * *."

In the instant case the person making the statements and writing the note is dead and certainly not available. The evidence does not establish the oral or written statements of the decedent to possess a high degree of trustworthiness nor are the statements shown to be relevant to the guilt or innocence of the appellant of the murder of his wife. Neither the statements made by the victim on the weekend prior to her disappearance nor the contents of the note comes within the exception to the hearsay rule. Both were properly excluded.

■ Next, the appellant charges that the trial court erred by refusing to allow Jeanetta Scruggs, the appellant's daughter, to testify concerning the contents of the missing note. The appellant argues that he was prohibited from placing an avowal into the record and that therefore we must reverse this case for a new trial. Once again the facts gleaned from the record do not bear out the appellant's argument. The transcript of Jeanetta Scruggs' testimony shows that counsel for appellant asked the following question, "At any time that day did your father say anything to you about a note?" The witness replied, "I don't remember." Thus the question was asked by counsel and answered by the witness. Since the appellant's counsel received a definitive answer to the question he propounded, we fail to see merit in the argument that an avowal should have been allowed as a matter of right. We find no error here.

■ The appellant contends, for his ninth assignment of error, that Damon Kirby was improperly allowed to serve as a juror in this case. An extensive voir dire of Kirby was conducted by counsel. In fact the examination by the defense consumes approximately fourteen pages in the record. In support of this challenge the appellant, in his brief, says that Kirby "also stated that he had discussed the case with a chief prosecution witness, Jerry Fann." The record does not reveal that this happened. The record does disclose that the juror, Damon Kirby, was merely present with other persons on an occasion when Fann was just talking about the incident. There was no direct dialogue between Jerry Fann and Damon Kirby. It appears from the transcript of testimony that the trial judge, after carefully examining the facts, concluded that it was clear and convincing that this juror could and would decide the issues without any preexisting convictions of appellant's guilt.

■ Assuming arguendo that this matter had been properly preserved for appellate review, we note that a trial judge has a certain amount of discretion in such matters. *Pennington v. Commonwealth*, Ky., 455 S.W.2d 530 (1970). Unless clearly erroneous, the exercise of such discretion is a judicial prerogative and is not subject to review by an appellate court.

Next, the appellant contends that the trial court erroneously applied RCr 9.48 and thus prejudiced the appellant and abused its discretion. We disagree. That rule provides as follows:

"If either a defendant or the commonwealth requests it, the judge may exclude from the hearing or trial any witness of the adverse party not at the time under examination, so that he may not hear the testimony of the other witnesses. This provision shall not apply to the parties to the proceeding."

■ Pursuant to RCr 9.48, the court refused to allow W. D. Weaver to testify for the defense since he had been present during some, if not all, of the proceeding. We hold that this was error but the testimony was not of such weight as to constitute prejudice.

■ Also, it is the contention of the appellant that the rule was improperly applied to Sheriff Minix who testified for the prosecution. However, in *Jaggers v. Commonwealth*, Ky., 439 S.W.2d 580 (1969), we held that, "It is well settled that the trial court in the exercise of proper discretion, may permit a witness to testify even though the separation rule has not been observed." We find no abuse of discretion.

Jerry Fann and Donnie Finn were also subject to the rule and its ramifications. Fann testified first and was admonished not to discuss his testimony, but he ignored the admonition and spoke with Finn. The appellant requested that Finn's testimony be excluded. The court allowed Finn to testify and also allowed the appellant's counsel sufficient latitude to expose the improper dialogue between the two men to impeach Finn's credibility. Under the circumstances we find no abuse of discretion by the court. The interrogation disclosed that Fann had talked to Finn, but it does not disclose what was said by either of the parties pertaining to the action.

The next assignment of error by appellant concerns the excluded testimony of Thomas Scruggs, Jr., the appellant's 11-year-old son. The court held an in-camera interrogation of the witness in the presence of counsel, but for some inexplicable reason the hearing was not reported. Consequently, there is no transcript of the dialogue. The trial judge determined not to permit the witness to testify for two reasons, as follows:

"Number one: Last evening approximately fourteen hours prior to this very moment the Court interviewed this boy and his sister in the presence of all counsel as stated. It was obvious at the time that this child did not have any mental direction of his own. That his opinions were merely reflections of what had been said to him. The child demonstrated complete lack of emotional stability which was confirmed approximately twenty minutes after this child left the chambers when he had a seizure or black out and fell to the floor in the presence of the Welfare worker, Mrs. Suzanne Pardue, Scottsville, Kentucky.

Number two: It is beyond the Court's view of value that the opinion of this child as to the mental reaction of his elders could be competent or accurate. It is blatantly obvious to the court that the statement taken from this child was taken under conditions of excitement and would, if anything, be misleading to the jury. The other reason the Court has for excluding this testimony is that it is believed that an appearance by this child in Court would be a permanent traumatic emotional experience for him and the Court has been strongly urged by those who have had this child in custody for the past several months not to permit this type testimony and the duress which would accompany it. Lastly, this testimony which would be offered by the child is cumulative and grossly repetitious. The court can conceive of no need for further or additional reasons for its ruling. * * *."

Thus it appears to us that the trial judge carefully examined the minor and determined that the child should not be permitted to testify. *Hendricks v. Commonwealth*, Ky., 550 S.W.2d 551 (1977). The record does not reflect an abuse of discretion in this instance.

The next claim of error concerns a procedural ruling handed down by the trial judge in regards to the appellant's counsel. The record reveals that the appellant had three attorneys present in the courtroom during the trial and the Commonwealth had two. In an attempt to facilitate an orderly trial, the court ruled that any one of the attorneys could question a witness, but that once questioning had begun the other attorneys were to ask no questions nor were they to raise any objections until that witness was excused. There was no inhibition to all three defense counsel conferring at any time. We find this innocuous procedure to be a valid precautionary measure designed to assure an orderly trial and a coherent transcript. In all cases the circuit courts may regulate their practice in any manner not inconsistent with the criminal or civil rules of procedure. CR 83. Also, we observe that no objection was offered to this procedural rule. Thus this matter is not preserved for appellate review. RCr 9.22.

Next, the appellant asserts that the comments of the trial judge directed toward counsel for the appellant were prejudicial. We take judicial notice that an

eight-day murder trial in which the Commonwealth was represented by two attorneys and the defense by three attorneys will be taxing not only upon counsel but upon the trial judge as well. Although there are disparaging comments of the court directed at both counsel for the Commonwealth and counsel for the appellant, we do not consider the cumulative effect of the comments to be prejudicial to the appellant. *Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949 (1969).

The appellant next charges that the sheriff and the trial judge improperly communicated with the jury after it had retired to the jury room. The record reflects that after about five hours of deliberating the jury advised the sheriff that it needed to confer with the judge. The trial judge, who was in close proximity but not in the jury room, told the jury that he could not help it. This is the only communication that occurred, but counsel for the appellant would have this court condemn the action of the trial court and reverse the action. Counsel for the appellant raised no objection in a subsequent dialogue with the court concerning this matter. On the contrary, counsel commented to the trial court as follows, "Well I think the court has been extremely careful all through the trial." No error has been pointed out to this court.

For his fifteenth assignment of error the appellant submits that the evidence adduced by the prosecution in this case cannot justify a verdict of guilty beyond a reasonable doubt. We have carefully perused the record and are unable to locate the appellant's motion for a directed verdict at the end of his case in chief or at the conclusion of all of the evidence. This issue must be presented to the trial judge and he be afforded an opportunity to review and correct his action if he deems it appropriate. For example, at the conclusion of the Commonwealth's evidence in chief, the defendant may make a motion for the court to direct a verdict of acquittal. In the event the motion is granted, then the charges will be dismissed. On the other hand, if the motion is denied, then, and in that event,

the defendant must either stand on his motion and refuse to put on any proof or he may present his evidence to support his defense. At the conclusion of the defendant's case, he must renew his motion for a directed verdict of acquittal. In the event the motion is granted, the charges will be dismissed. On the other hand, if the motion is denied, then the Commonwealth must proceed to put on its rebuttal evidence, if any, and at its conclusion the defendant must again renew his motion for a directed verdict of acquittal. In each such instance the trial judge would have been afforded an opportunity to pass on the propriety of the motion. This is essential, not only essential but mandated by RCr 9.54.

During the closing argument of the Commonwealth's Attorney he expressed his personal opinion of appellant's guilt. This was improper conduct. However, in this instance we do not consider this impropriety to be of such magnitude as to require reversal. In any event, no objection was made; consequently, the issue was not preserved for appellate review.

The Commonwealth's Attorney was properly permitted to remind the jury that the victim, on December 2, 1975, went to her lawyer's office to reinstate her divorce action, which action was confirmed by the secretary to Mrs. Scruggs' attorney. This evidence supports the argument of the Commonwealth's Attorney.

Counsel for the appellant rightly objected to the Commonwealth's Attorney's charge that the appellant stole the murder weapon. However, this was corrected by the Commonwealth's Attorney with apologies. No admonition was sought by counsel for appellant and none was given.

Appellant's counsel charges the Commonwealth's Attorney with misstating testimony relating to the method employed by the Commonwealth in ascertaining suspects, the purpose for which Donnie Finn and Jerry Fann were together when they discovered the body of Mrs. Scruggs, the comments of appellant relating to his guilt

(that the Commonwealth would have to prove that he committed the offense), the reference to the number of witnesses used by the Commonwealth and the insignificance of their testimony, and the report of the autopsy. The conclusions enunciated by the Commonwealth's Attorney in these respects are not in conflict with the testimony. The court rightly overruled appellant's objection.

The judgment is affirmed.

All concur.