Michael Wayne HOLT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2006–SC–000391–DG.

Supreme Court of Kentucky.

April 24, 2008.

Daniel T. Goyette, Louisville Metro Public Defender, Frank WM Heft Jr., J. David Niehaus, Deputy Appellate Defender, Office of the Louisville Metro Defender, Louisville, KY, for Appellant.

Jack Conway, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, for Appellee.

Opinion of the Court by Justice SCOTT.

Appellant, Michael Holt, appeals from a Court of Appeals decision upholding his conviction by a Jefferson Circuit Court jury on one count of first-degree rape, one count of first-degree sodomy and one count of impersonating a police officer. Appellant received a total sentence of eighteen years. This Court granted discretionary review of these convictions.

The current matter for review before this Court presents two issues regarding the admission and exclusion of evidence. The first centers on the trial judge's decision to allow evidence of Appellant's twenty-four (24) and twenty-five (25) year old prior convictions for impeachment purposes. The second concerns the denial of Appellant's request to impeach a witness with evidence of her felony charge and status in the diversion program of KRS Chapter 533. In a trial which lacked conclusive physical evidence, and where the conviction was highly dependent upon the jury's assessment of credibility, the effect of introducing Appellant's stale convictions mandates reversal. Accordingly, we now reverse for a new trial.

## I. BACKGROUND

In the early morning hours of December 11, 2002, Appellant, Michael Holt, went to a Jefferson County White Castle restaurant on a meal break from his place of employment, at which point he met the alleged victim, hereinafter referred to as V. Appellant's and V.'s version of the subsequent events differ substantially, although it is undisputed that their meeting culminated in a sexual interlude. Holt claims that after meeting V. he engaged in consensual sex with her in exchange for a ride. V. claims, however, that Holt tricked her into accepting a ride from him by impersonating a police officer, whereupon he raped and sodomized her.

At trial, Holt testified that on the night in question he was sitting in his automobile

eating his meal when V. approached and asked him for a ride. V. had been arrested earlier that day and had just been released from jail. According to her testimony, V. had made several phone calls to her mother and stepfather to arrange for either her stepfather or sister to pick her up from jail. However, for reasons unknown, upon being released, V. walked from the jail to a White Castle restaurant located nearby. V. claimed that she went to the White Castle because she could not find a telephone to call for her ride, although she admitted during trial that there were pay phones located immediately outside the jail exit.

Holt contends that after V. asked him for a ride, he inquired as to where she lived. When she told him, Holt claims that he informed her that he could not take her that far. He testified, however, that he agreed to give her a ride when V. indicated that she would exchange sex for a ride to her boyfriend's apartment. Holt then phoned his work crew to inform them that he would be returning late from his meal break.

Holt maintains that as they neared the vicinity of the boyfriend's apartment, V. informed him that they could not go there to have sex. However, she then suggested a place where they could go. Holt testified that when V. inquired as to whether he had a condom, he informed her that he did not. He claims that V. agreed to have sex anyway, so long as Holt promised not to ejaculate inside of her. Holt claims that the two then had consensual intercourse. However, Holt testified that when he ejaculated inside of her, V. became extremely angry. As they were driving toward the apartment, Holt claims that V. asked him to give her twenty dollars so that she could buy some marijuana to calm herself down. Holt refused. He then dropped her off in front of the apartment and drove away.

In contrast, V. claims that Holt approached her outside of the restaurant and asked her if she needed a ride home. She claims that she responded that she did not accept rides from strangers. V. testified that Holt informed her that he was a police officer and showed her a badge. Deciding that the ride would be acceptable, V. then got into Holt's automobile and indicated where she needed to go. V. testified that Holt told her that he would take her back to jail and tell them she was a prostitute. V. further testified that Holt told her to show him her breasts and to pull down her pants. V. alleges that when she objected, Holt showed her a gun and told her he would use it if she did not do what he said. V. claims that Holt then sodomized and raped her.

After being dropped off, V. was taken to the University of Louisville Hospital. Physical evidence proved inconclusive as to whether the sexual intercourse was consensual. DNA analysis of the sexual assault kit and the hair, blood, and saliva samples taken from Appellant were found to be consistent with the vaginal swab taken from V. The examining physician testified that there were no injuries apparent on V., except a small mark on the left hip and hand.

Subsequently, Appellant was charged and convicted of first-degree rape, first-degree sodomy, and impersonating a police officer. The Court of Appeals thereafter affirmed Appellant's conviction. We granted discretionary review.

## II.  ANALYSIS

**A.  The trial court committed reversible error in admitting the twenty-four and twenty-five year old prior felony convictions for impeachment purposes.**

■ Appellant argues that the trial court abused its discretion in allowing in

stale convictions as impeachment evidence. We agree.

At trial, the prosecutor's first statement to Appellant upon cross-examination was, "You are a convicted felon." Appellant's counsel immediately objected, maintaining that the convictions (theft and receiving stolen property) were too old to use, as the most recent conviction was twenty-four (24) years old. However, the trial judge determined that the convictions dealt with veracity and were thus admissible. Appellant then admitted that he was a convicted felon.

■ KRE 609 governs the admissibility of prior convictions to impeach a witness's credibility. It permits the admission of a prior felony for impeachment, pursuant to certain limitations. *See* KRE 609(a). However, KRE 609(b) states that "evidence of a conviction under this rule is *not admissible*" if it is more than ten (10) years old *unless* "the probative value substantially outweighs its prejudicial effect." (emphasis added). Clearly, the language of KRE 609(b) creates a presumption of inadmissibility for convictions over ten years old unless the convictions are so substantially probative as to tip the scales back in favor of admissibility. While KRE 609(b) does not divest a trial judge of his discretion in admitting stale convictions, it is precatory in that it acknowledges a much higher threshold for admissibility. *See McGinnis v. Commonwealth*, 875 S.W.2d 518, 528 (Ky.1994) *overruled on other grounds by Elliott v. Commonwealth*, 976 S.W.2d 416, 421 (Ky.1998).

■ In *Miller v. Marymount Medical Center*, we noted that when ruling on admissibility for impeachment evidence under KRE 609(b), the balancing test is the exact inverse of the typical balancing test under KRE 403. 125 S.W.3d 274, 284 (Ky.2004) ("Under KRE 403, relevant evidence is admissible unless its probative value is substantially outweighed by its prejudicial effect. Under KRE 609(b), the evidence is inadmissible unless its prejudicial effect is substantially outweighed by its probative value."). Moreover, this Court outlined a series of factors relevant in conducting this balancing test, which include: 1) whether the witness has placed his credibility in issue by testifying in contravention to other witnesses; 2) whether the prior conviction being offered for impeachment is probative of truthfulness; 3) whether the case is civil or criminal; and 4) the age of the conviction sought to be introduced. *See id.* at 285–286. Where the facts of any particular case fall along the spectrum of these factors will influence the balancing that a trial judge must undertake. For instance, prior felony convictions will be more prejudicial in a criminal case than a civil case, and a ten year old conviction will be more probative than a twenty year old conviction. *Id.*

■ Here, the stale convictions did not just slightly miss the mark. Appellant's prior convictions occurred a quarter of a century prior to the circumstances for which he was on trial. This Court has consistently recognized the heightened scrutiny which stale convictions should receive. In *Brown v. Commonwealth*, we held that the trial court committed reversible error in admitting a twenty-two (22) year old prior conviction for storehouse breaking. 812 S.W.2d 502, 503 (Ky.1991), *overruled on other grounds by Stringer v. Commonwealth*, 956 S.W.2d 883 (Ky.1997). Also, in *Scruggs v. Commonwealth*, we held that the trial court properly excluded appellant's seventeen (17) year old prior felony conviction because it was "so remote as to have no bearing on credibility." 566 S.W.2d 405, 408 (Ky.1978). As we noted in *Sommers v. Commonwealth*, 843 S.W.2d 879, 887 (Ky.1992), "[a]s a conviction recedes into the past, the value on the issue

of credibility wanes proportionately, while its prejudice as to guilt is less easily dispelled."

The standard of review for the admission of evidence is whether a trial court has abused its discretion. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999). And in conducting a KRE 609(b) balancing test, the onus is on a trial judge to render findings of fact. *See Miller*, 125 S.W.3d at 286.

Here, the trial judge's findings of fact failed to support admissibility under the KRE 609(b) balancing test, and, thus, he abused his discretion in allowing the introduction of Appellant's twenty-four and twenty-five year old prior convictions. We disagree with the Court of Appeals' determination that the trial judge did engage in sufficient balancing and that, as in *Miller*, Appellant's prior convictions of theft and receiving stolen property were admissible because they reflected upon his credibility as crimes of dishonesty. *See Miller*, 125 S.W.3d at 285 (holding introduction of burglary conviction which was more than ten years old admissible). Although, certainly this is a relevant factor, it is not the only consideration. *See Commonwealth v. Richardson*, 674 S.W.2d 515, 517 (Ky. 1984).

In this regard, several important distinctions bear addressing. First, *Miller* was a civil case, whereas, this is a criminal matter. As the Court noted in *Miller*, "while evidence that a party is a convicted felon is always prejudicial, it obviously is not as prejudicial in a civil case as in a criminal case." 125 S.W.3d at 285. Second, the nature of the offense is but one of the considerations the Court outlines in *Miller* that a trial judge should weigh. Third, although unclear from the opinion, it appears that the aged conviction in *Miller* was approximately twelve years old.

Here, the most recent conviction was twenty-four years old. Thus, although the facts in *Miller* supported a determination of admissibility, given the circumstances of this particular case, we are, respectfully, disinclined to agree with the Court of Appeals' determination that the present instance was sufficiently analogous, or that the trial judge here reached the appropriate KRE 609(b) result.

In the present instance, witness credibility was central to the furtherance of either side's position, as both Appellant and his accuser, V., gave drastically conflicting testimony about what happened on the night in question. Therefore, the result likely hinged on whose account the jury deemed more reliable. Assuredly, the introduction into evidence that one of the parties telling their story was a convicted felon had the potential to irreparably taint the jury's perception of that person. Here, the trial judge allowed the introduction of Appellant's stale offenses while properly disallowing introduction of his accuser's felony charge and diversion. While we find this secondary ruling correct, in all probability, it had the effect of further skewing the jury's perception of the testimony. Thus, we cannot say that introduction of this evidence was harmless. RCr 9.24. Therefore, the admission of Appellant's quarter century old prior convictions was an abuse of discretion and particularly prejudicial, bearing in mind the nature of the case. Accordingly, we find that the trial court committed reversible error in so doing. *See Brown*, 812 S.W.2d at 503.

**B. The trial court properly excluded evidence that the alleged victim was in a felony pretrial diversion program.**

Having already concluded that the aforementioned error mandates reversal, for purposes of retrial, we now turn to

Appellant's next allegation of error. Appellant argues that the trial judge erred by not allowing him to impeach V. with evidence that she was in a felony pretrial diversion program for complicity to trafficking in marijuana. We disagree.

Before trial, the Commonwealth made a motion in limine to prevent any reference to V. being on diversion. Appellant argued that because V. was under the Commonwealth's supervision during diversion and was the primary witness, the matter was relevant for impeaching her to show potential bias. The trial court, however, sustained the Commonwealth's motion, indicating that it could not find a link between V.'s participation in the program and the case at hand. Appellant now asserts that he should have been able to impeach V. with this evidence, and that, as such, the evidence was probative of bias because the witness was compelled to maintain favor with the Commonwealth during trial. We disagree. V.'s mere participation in a pretrial diversion program, absent any further showing upon which to infer bias, is an insufficient basis for impeachment.

Assuredly, witness credibility is always a probative issue in any case. The right to impeach a witness to show bias or prejudice is fundamental to a fair trial. *Williams v. Commonwealth*, 569 S.W.2d 139, 145 (Ky.1978) (citing *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). Likewise, the right of a criminal defendant to disprove the testimony of an unfavorable witness is a practical analog to the right of confrontation. *See Adcock v. Commonwealth*, 702 S.W.2d 440, 441 (Ky.1986). In that vein, the United States Supreme Court has held that a

criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness."

*Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986) (*quoting Davis*, 415 U.S. at 318, 94 S.Ct. at 1111).

While it is true that the Confrontation Clause guarantees an opportunity to engage in cross-examination, it does not guarantee cross-examination in whatever manner and extent that the defense so desires. *Davenport v. Commonwealth*, 177 S.W.3d 763, 768 (Ky.2005); *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435. The cross-examination must, at the threshold level, be appropriate, in that it must elicit testimony of such a nature as to reasonably call into question the witness's reliability. There must exist some practical connection between the evidence sought to be introduced and the alleged implication of bias. *See Commonwealth v. Maddox*, 955 S.W.2d 718, 721 (Ky.1997). Specifically, the evidence should have some proclivity to demonstrate impropriety or partiality beyond abject speculation. When it does not, the trial court is well within its purview in limiting evidence that does not support such an inference of bias. *See Bowling v. Commonwealth*, 80 S.W.3d 405, 411 (Ky.2002).

A trial judge is not divested of his authority or discretion simply because the proposed evidence could possibly pertain to bias. *See Davenport*, 177 S.W.3d at 768. "So long as a reasonably complete picture of the witness' veracity, bias and motivation is developed, the judge enjoys power and discretion to set appropriate boundaries." *Maddox*, 955 S.W.2d at 721.

Here, the jury was presented with a reasonably complete picture of the witness's veracity and motivation. In the present instance, the jury heard testimony that V. had been in jail and charged with possession of marijuana and disorderly conduct on the night of the alleged rape. As the Court of Appeals noted, any further evidence upon this matter would likely have been inadmissible under KRE 403.

In *Davenport*, we held that the trial court acted within its discretion in limiting cross-examination pertaining to impeachment evidence of probationary status and pending misdemeanor charges to show bias. 177 S.W.3d at 767. This Court adopted the rationale of the United States Supreme Court in *Van Arsdall* in determining that a trial judge may properly exercise discretion in establishing appropriate boundaries in the development of a reasonably complete picture of the witness' veracity, bias, and motivation. *Id.* at 770 (citing to *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435). "The trial court does not err in limiting evidence of potential bias when there is a lack of credible evidence supporting the inference." *Davenport*, 177 S.W.3d at 769.

We find that the trial court, here, as in *Davenport*, was correct in its decision that no practical connection existed between V.'s participation in the diversion program and an insinuation of bias. No inference of bias could reasonably arise from participating in a diversion program under these circumstances. Thus, any decision otherwise implicating bias (because V. was in diversion) would have been purely speculative. V. initiated prosecution of Appellant long before her subsequent felony charge was filed and before the guilty plea was entered into. The alleged rape occurred in December 2002. V. entered into a plea agreement in May 2004. V. picked Appellant out of a photo lineup prior to her plea agreement, and her story remained unwavering. V.'s subsequent placement into the diversion program did not suddenly render her previous allegations a nullity. Moreover, although V. was placed into the diversion program upon the Commonwealth's recommendation, once in diversion, V. was subject to a court order with regard to the program's conditions.

Accordingly, we agree with the Court of Appeals determination that the trial court properly excluded evidence of V.'s guilty plea to the felony charge and her subsequent entry into the diversion program, as the evidence was simply not probative of bias.

## III. CONCLUSION

For the foregoing reasons, we reverse the Opinion of the Court of Appeals, vacate Appellant's conviction and sentence, and remand the matter for a new trial consistent herewith.

LAMBERT, C.J.; MINTON, NOBLE, and SCHRODER, JJ., concur.
ABRAMSON, J., concurs in result only.

CUNNINGHAM, J., concurs in result, however, believes the victim's conviction was admissible. Even though it was diverted, it was still a felony conviction. And the critical time for credibility impeachment is a trial, not at time of the crime.