COMMONWEALTH of Kentucky,
Appellant,

v.

Chester MADDOX, Jr., Appellee.

Nos. 96–SC–679–DG, 97–SC–163–DG.

Supreme Court of Kentucky.

Oct. 30, 1997.

A.B. Chandler, II, Attorney General, Paul D. Gilbert, Assistant Attorney General, Frankfort, for Commonwealth of Kentucky.

Daniel T. Goyette, Frank W. Heft, Jr., Bruce P. Hackett, Office of the Jefferson District Public Defender, Louisville, for Chester Maddox, Jr.

## OPINION

LAMBERT, Justice.

Two year old Terrance Davis was brought by ambulance to the emergency room at Kosair's Childrens Hospital at 8:41 a.m. on August 19, 1993. Terrance had sustained a massive skull fracture, a ruptured blood vessel in his abdomen, and he was bruised virtually all over his body. He was in a coma when he was brought in and his condition deteriorated throughout the day. That evening, at 8:02 p.m., Terrance died. Terrance's injuries were later described as similar to those sustained by a person who had been hit by a car and thrown forty feet. However, Terrance was not hit and thrown by an automobile. Rather, he suffered these tragic, fatal injuries while he was in his home.

Terrance's home was on South Shelby Street in Louisville where he lived with his mother, Michelle Davis, Michelle's six-year-old niece, and Chester Maddox, Jr., a man with whom Michelle had recently formed a relationship and who had moved into the home two weeks prior to Terrance's death. In addition to the people in the home, Terrance also came into regular contact with Michelle's mother, Beverly Stewart, and Michelle's brother, Michael Stewart, as, on occasion, both cared for him while Michelle was at work.

The day before Terrance died, Michelle had taken him to the pediatrician because he was suffering from flu-like symptoms. The record of that visit did not indicate that Terrance had any bruises. That evening, Michelle went to work, and left Maddox to watch Terrance and her niece. While Michelle was at work, her brother Michael Stewart dropped by the house and visited for approximately two hours. During his visit, Michael Stewart was never alone with Terrance.

Michelle returned from work that evening to find Maddox in the kitchen, and the two children upstairs. She watched television for a while, then she and Maddox went to bed. Later, Michelle went downstairs to watch television again. Maddox joined her for a while, and then returned to bed. Michelle eventually went back upstairs, checked on the children, covered Terrance, and went to bed.

The next morning, Maddox found Terrance on the floor of the children's bedroom. He noticed that Terrance's head was swollen, and that he was breathing only once every ten seconds. Maddox put Terrance back into bed. He called for Michelle, told her that something was wrong with Terrance and that he was going to take him to the hospital. Michelle got up and found Terrance in his bed with his eyes half open. When she picked him up, she found that his breathing was irregular and that he was unresponsive. Maddox called 911 and an ambulance arrived and took Terrance to the hospital.

Maddox was charged with the murder of Terrance Davis, and was tried in the Jefferson Circuit Court. He was convicted of manslaughter in the first degree and was sentenced to sixteen years imprisonment. At trial, assistant state medical examiner Dr. Tracey Corey–Handy testified that the head injury and the abdominal injury were the causes of Terrance's death. Autopsy photographs depicting the dead child's injuries, including the multiple bruises to his head,

face, neck, chest, back and legs, were introduced into evidence. One such photograph was an infrared photo of a massive bruise to Terrance's anus. However, there was no evidence at trial suggesting that Terrance had been sexually abused. Both Michelle Davis and her brother Michael Stewart testified for the prosecution.

The Court of Appeals reversed Maddox's conviction based on the trial court's ruling which disallowed cross examination of prosecution witnesses Michelle Davis and Michael Stewart about their alleged prior abuse of other children. By avowal, evidence was presented that Michelle Davis had previously whipped another child to the extent that a shoe imprint had resulted, and there was evidence that Michael Stewart had sexually molested another child. The Commonwealth was granted discretionary review of the opinion of the Court of Appeals, and Maddox's cross-motion for discretionary review challenging the trial court's ruling which allowed introduction of autopsy photographs was also granted.

## I. LIMITATION ON CROSS–EXAMINATION

In an effort to cast doubt on his involvement in Terrance's death, Maddox sought to cross examine Michelle Davis and Michael Stewart as to allegations of their abuse of other children. As to Michelle Davis, excluded cross-examination would have shown that one month prior to Terrance's death, she allegedly struck one of her sister's children so hard with a shoe that an imprint was left on the child. The Cabinet for Human Resources investigated and substantiated this allegation and Michelle admitted that she administered the blows to the child. During the Cabinet's investigation of Michelle, an allegation was made that her brother, Michael Stewart, had sexually molested one of the boys in her care. This allegation was also substantiated by the Cabinet, and Michelle agreed to prevent her nephews from being alone with Michael. After the Cabinet's investigation, at Michelle's request, these three children were removed from her home. Neither Michelle nor Michael had criminal charges brought against them.

Eventually one of Michelle's nieces was again placed in Michelle's home.

Maddox argues that he should have been allowed to cross examine Michael Stewart regarding the substantiated sexual abuse allegations against him. He claims that even though there was no evidence or testimony about Terrance having been sexually abused, the photograph which depicted the massive bruise to the child's anus permitted the inference that Terrance had been sexually abused by the person who caused his death. The trial court held that Michael Stewart could not be so cross-examined. Reversing, the Court of Appeals held that Maddox should have been allowed to cross examine Michael Stewart on this issue.

[T]he fact that Michael had been accused of sexually molesting another child became relevant when the Commonwealth introduced an infrared photograph from which it could be inferred that Terrance had been sexually abused at about the same time as he was fatally injured ... Given that Michael Stewart had access to Terrance not long before his death, that he had a documented history of child sexual abuse, and given the Commonwealth's introduction of a photograph raising the inference that the child had recently been sexually abused, we think that the evidence sought to be elicited was relevant and should have been admitted.

Slip op. at 8. A similar view was expressed with respect to the trial court's limitations on the cross-examination of Michelle Davis. The Court of Appeals held that "this evidence should have been admitted so that the jury could place 'a proper estimate on [Michelle's] testimony.'" Slip op. at p. 10–11. As explained hereinafter, we disagree with the view of the Court of Appeals and reverse on these issues.

Whenever limitations on the right of cross-examination are analyzed, it should be remembered that the right implicated is a fundamental constitutional right and that such limitations should be cautiously applied. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Davis v. Alaska*, 415 U.S. 308, 320–21, 94 S.Ct. 1105, 1112–13, 39 L.Ed.2d 347, 356 (1974); *Olden*

*v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988); and *Commonwealth v. Cox,* Ky. 837 S.W.2d 898 (1992). Witness credibility is always at issue and relevant evidence which affects credibility should not be excluded. *Parsley v. Commonwealth,* Ky., 306 S.W.2d 284 (1957). In R. Lawson, *The Kentucky Evidence Law Handbook,* § 4.15(II) (3rd ed. 1993), the relevancy requirement was described as including "any proof that tends to expose a motivation to slant testimony one way or another.... The range of possibilities is unlimited...." *Id.* at 183. However, it should also be noted that trial courts retain broad discretion to regulate cross-examination. "Defendants cannot run rough-shod, doing precisely as they please, simply because cross-examination is underway. So long as a reasonably complete picture of the witness' veracity, bias and motivation is developed, the judge enjoys power and discretion to set appropriate boundaries." *U.S. v. Boylan,* 898 F.2d 230, 254 (1st Cir.1990). This proposition was described in *Moore v. Commonwealth,* Ky., 771 S.W.2d 34 (1988), as follows:

> The presentation of evidence as well as the scope and duration of cross-examination rests in the sound discretion of the trial judge. This broad rule applies to both criminal and civil cases and is certainly applicable to a capital murder case.

*Id.* at 38.

In *Pace v. Commonwealth,* Ky., 636 S.W.2d 887 (1982), appellant claimed error in the scope of cross-examination. He claimed the interrogation "implied the existence of a factual predicate which he [the Commonwealth's Attorney] could not or did not support by the evidence." *Id.* at 889. Reversing, we directed that the prosecution substantiate its factual implications or refrain from cross-examining in that regard. We dealt with a similar question in *Smith v. Commonwealth,* Ky., 904 S.W.2d 220 (1995), where the defendant had given testimony which tended to shift blame to another for the crimes with which she was charged. Her testimony on direct examination and the implications which arose therefrom invited a reasonable inquiry as to the relationship between the defendant and the other person. Unlike this case, the defendant's testimony established a basis for inquiry on cross-examination which resulted in revelation of stigmatized behavior. There was a similar result in *Copley v. Commonwealth,* Ky., 854 S.W.2d 748 (1993), where we held that appellant had "opened the door to these collateral issues and rebuttal was permissible." *Id.* at 752.

 We recognize that the foregoing cases address the scope of cross-examination of the defendant on collateral issues. In such circumstances the trial judge must first determine whether the cross-examination which is sought is relevant (KRE 402) and then determine whether the probative value is outweighed by the prejudicial effect (KRE 403). However, when the cross-examination is of one other than the defendant, one who is not accused of having committed a crime and whose liberty is not at stake, greater latitude is generally allowed. *Byrd v. Commonwealth,* Ky., 825 S.W.2d 272 (1992); *Sanborn v. Commonwealth,* Ky., 754 S.W.2d 534 (1988); and *Barrett v. Commonwealth,* Ky., 608 S.W.2d 374 (1980). Nevertheless, a connection must be established between the cross-examination proposed to be undertaken and the facts in evidence. A defendant is not at liberty to present unsupported theories in the guise of cross-examination and invite the jury to speculate as to some cause other than one supported by the evidence. If it were otherwise, defendants could always present some far-fetched theory on the hope that some juror might be taken in by it. In our view, the discretion of the trial court in this regard may be properly exercised by reference to KRE 403 which permits the exclusion of evidence which might be otherwise relevant on grounds that confusion of the issues or misleading the jury may result.

A possible basis for allowing cross-examination of the type sought by appellant would be where prior acts of abuse inflicted by the witness on another were so similar to the abuse inflicted on the victim as to reveal a modus operandi or a signature crime.

 While evidence of prior bad acts is not admissible "to prove the character of a person in order to show action in conformity therewith," such evidence may be admissible

if it is offered for some other purpose, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident .." KRE 404(b)(1). However, evidence of prior, uncharged bad acts is not admissible just because a party asserts that such evidence tends to support one of the above listed purposes. Prior bad acts may be admissible to establish identity if the prior uncharged act is sufficiently similar to the charged act so as to indicate a reasonable probability that the acts were committed by the same person. *Billings v. Commonwealth*, Ky., 843 S.W.2d 890 (1992), (Evidence that stepfather of sodomy victim touched the victim's sister between the legs, exposed himself to the victim's sister, and encouraged victim's sister to watch sexually explicit movies was not sufficiently similar, thus not admissible.)

■ Similarly, evidence of other bad acts to prove a common scheme or plan must be so similar to the charged offense that it constitutes a "signature crime." *Rearick v. Commonwealth*, Ky., 858 S.W.2d 185 (1993). In determining whether prior bad acts should be admitted, this Court has placed emphasis upon common facts, and has held that the facts of the prior bad acts must be so similar as to indicate a reasonable probability that the acts were committed by the same person. *Lear v. Commonwealth*, Ky., 884 S.W.2d 657 (1994).

■ The prior bad act at issue here, Michael Stewart's alleged sexual abuse of another child was not so similar to the crime committed to be admissible as evidence of either identity or modus operandi. Michael Stewart's alleged sexual abuse of the other child involved oral sodomy, which occurred while the child was asleep, and stopped when the child awoke. This was far different than any abuse that could be inferred from the pictures of the victim's bruised anus, let alone the dreadful beating of the child victim. Michelle Davis' prior bad act bears no similarity to those which were inflicted upon Terrance. Michelle's alleged abuse of the child in her charge involved hitting that child with a shoe, a far cry from the blunt force trauma which killed Terrance.

## II. ADMISSIBILITY OF PHOTOGRAPHS

■ Maddox's cross appeal challenges the trial court's admission of all thirteen autopsy photographs. Generally, photos which contain gruesome and shocking images are not automatically inadmissible. *Funk v. Commonwealth*, Ky., 842 S.W.2d 476, 479 (1992). However, where the victim's body has been materially altered through "mutilation, autopsy, decomposition or other extraneous causes, not related to the commission of the crime, so that the pictures tend to arouse passion and appall the viewer," then the general admissibility rule for photos may be overcome. *Clark v. Commonwealth*, Ky., 833 S.W.2d 793, 794 (1991). We agree with the Court of Appeals that the photographs admitted by the trial court were not so gruesome as to require exclusion.

For the reasons set forth herein, the opinion of the Court of Appeals is reversed on direct appeal and affirmed on cross appeal and the final judgment of the Jefferson Circuit Court is reinstated.

All concur.