RENDERED:  JANUARY 21, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2020-CA-0777-DG

TRAVIS LOCK                                                                                    APPELLANT

ON DISCRETIONARY REVIEW FROM WARREN CIRCUIT COURT
HONORABLE BRUCE T. BUTLER, SPECIAL JUDGE
v.                                  ACTION NO. 19-XX-00001

COMMONWEALTH OF KENTUCKY                                              APPELLEE

OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, MAZE, AND McNEILL, JUDGES.

MAZE, JUDGE:  Travis Lock appeals from a judgment of the Warren Circuit Court upholding his conviction in district court for operating a motor vehicle while having an alcohol concentration of 0.08 or more, first offense, and speeding.  After careful review, we affirm in part, reverse in part, and direct the circuit court to vacate the conviction and remand this matter to district court for a new trial.

## I.    FACTS AND PROCEDURAL HISTORY

On November 4, 2015, Kentucky State Police ("KSP") Post 3 dispatch received a call from a driver complaining of a black Mercedes with a burned-out taillight traveling at a high rate of speed, driving recklessly, and nearly hitting the caller. Trooper Jason Adkison ("Trooper Adkison") responded to the call, and upon his approach to the William H. Natcher Parkway, observed the headlights of two vehicles approaching him from the opposite direction. Trooper Adkison's radar recorded that one of the approaching vehicles was traveling at 91 miles per hour. When Trooper Adkison turned around to follow the speeding vehicle, he observed one taillight was out. He got behind the vehicle and initiated a traffic stop.

When Trooper Adkison approached the driver to request that he present a driver's license and proof of insurance, he detected an odor of alcohol emitting from the vehicle. Subsequently, Trooper Adkison asked the driver, Lock, to exit the vehicle and perform three field sobriety tests. Based on the results of the tests, which indicated impairment, Trooper Adkison informed Lock that he was being arrested for driving under the influence and speeding.

Upon arriving at the Warren County Regional Jail, Trooper Adkison read Lock the implied consent warning and began the twenty-minute observation period before administering the breath test. During the September 18, 2018,

-2-

suppression hearing and later at trial, Trooper Adkison explained that he maintained observation of Lock during the entire observation period and confirmed that nothing was introduced into Lock's mouth. Following the twenty-minute observation period, Trooper Adkison used six additional minutes to complete paperwork and enter information into the breath test instrument, the Intoxilyzer 5000, before administering the test to Lock. Trooper Adkison stated that he administered the breath test on the Intoxilyzer 5000 exactly the way the manufacturer recommends. However, Trooper Adkison admitted that he failed to read to Lock the second instruction on the operational procedure sheet posted by the Intoxilyzer.

Additionally, Trooper Adkison made an audio recording of the observation period. The sounds of someone grunting and clearing of their throat/nasal passages can be heard on the recording. Lock testified that he was suffering from a sinus infection and claimed that he used Vicks Sinex nasal spray moments before the traffic stop, which caused substantial sinus drainage. Lock explained that the Sinex caused him to hack up drainage and phlegm during the twenty-minute observation period, as heard on the audio recording.

The district court held two evidentiary hearings on Lock's motions to suppress. The first suppression hearing, on June 13, 2016, concerned Lock's motion to suppress because of a lack of a reasonable articulable suspicion to stop

Lock, no probable cause for arrest, and to suppress the blood alcohol concentration ("BAC") results due to Trooper Adkison's failing to comply with Kentucky Revised Statutes and Administrative Regulations. The second hearing, on September 27, 2018, concerned Lock's motion to suppress because Trooper Adkison failed to follow the manufacturer's instructions requiring a twenty-minute observation period before administering the breath test. The district court denied both motions to suppress. The case proceeded to trial by jury on February 8, 2019, at which the jury found Lock guilty of driving under the influence and speeding. The jury recommended that Lock serve ten days in jail and pay a $300.00 fine, which the district court imposed.

Subsequently, Lock appealed to the circuit court. On appeal, the circuit court found that, while there was a statutory violation associated with the administration of the breath test, the violation did not prejudice Lock. The circuit court found no error or abuse of discretion on the other issues. Consequently, the circuit court affirmed the district court's judgment. Thereafter, this Court granted Lock's motion for discretionary review. Additional facts will be set forth as necessary.

## II. DENIAL OF MOTION TO SUPPRESS BREATH TEST

On appeal, Lock primarily argues the district court erred by denying motions to suppress the breath result because Trooper Adkison failed to follow the

manufacturer's operational instructions when he neglected to read to Lock the second instruction on the operational procedure sheet. Lock also claims that Trooper Adkison violated requirements of Kentucky law by observing Lock for 26 minutes before administering the breath test, as opposed to the twenty-minute observation period requirement. In reviewing the denial of a motion to suppress, the standard of review consists of two parts pursuant to RCr[1] 8.27. "First, the factual findings of the court are conclusive if they are supported by substantial evidence[;]" and second, this Court conducts "a *de novo* review to determine whether the [trial] court's decision is correct as a matter of law." *Stewart v. Commonwealth*, 44 S.W.3d 376, 380 (Ky. App. 2000) (footnote omitted) (citing *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky. 1998)).

KRS[2] 189A.103(4) provides: "A breath test shall consist of a test which is performed in accordance with the manufacturer's instructions for the use of the instrument." Furthermore, the Supreme Court of Kentucky requires the Commonwealth to meet five foundation requirements for the results of a breath alcohol test to be admissible:

> 1) That the machine was properly checked and in proper working order at the time of conducting the test.

---

[1] Kentucky Rules of Criminal Procedure.

[2] Kentucky Revised Statutes.

2) That the chemicals employed were of the correct kind and compounded in the proper proportions.

3) That the subject had nothing in his mouth at the time of the test and that he had taken no food or drink within fifteen minutes prior to taking the test.

4) That the test be given by an operator who is properly trained and certified to operate the machine.

5) That the test was administered according to standard operating procedures.

*Commonwealth v. Roberts*, 122 S.W.3d 524, 526 (Ky. 2003).

The Supreme Court of Kentucky further stated that the distinction between "manufacturer's instructions" and "standard operating procedures" is "a distinction without a difference." *Id.* at 527.

Here, the Commonwealth failed to establish "[t]hat the test was administered according to standard operating procedures." *Id.* at 526. The Kentucky Breath Test Operational Procedures outline a ten-step process for administering a breath test. In this case, the second step of this process is in question, which reads:

2. Check for MOUTH SUBSTANCES and read the following:

During the next 20 minutes you are not allowed to eat, drink, smoke, or place anything in your mouth or nasal passages. Do you have anything in your mouth at this time?

Trooper Adkison testified that he did not read the second step of the procedures. In *Taylor v. Commonwealth*, this Court reversed a district court's order denying the appellant's motion to suppress when it found that "the Commonwealth failed to establish that it met the foundation requirements necessary to admit the breath test results" when the trooper administering the breath test failed to follow the second step of the operating procedures. No. 2020-CA-0262-DG, 2021 WL 1051581, at *9 (Ky. App. Mar. 19, 2021). Additionally, this Court reasoned that it need not address additional arguments regarding the length of the observation period or whether the presence of a foreign substance in a subject's mouth invalidates breath test results because the foundation requirements were not met. *Id. See also Commonwealth v. Mefford*, No. 2016-CA-000840-DG, 2017 WL 4863183 (Ky. App. Oct. 27, 2017).

Although *Taylor* is an unpublished opinion, the facts of that case are very similar to those in the current case. As in *Taylor*, the Commonwealth failed to establish the foundation requirements necessary to admit the breath test results against Lock. Therefore, we find that the district court erred by admitting the breath test results because the Commonwealth failed to meet the foundation requirements necessary to admit the breath test results when Trooper Adkison did not follow the second step of the operating procedures. Similarly, we need not address Lock's argument regarding the length of the observation period.

Consequently, we must direct the circuit court to vacate Lock's conviction and remand for a new trial.

## III.   OTHER ISSUES

In light of this conclusion, we will address Lock's remaining arguments only to the extent that they may arise again at the new trial.  First, Lock argues that the district court abused its discretion in four evidentiary issues:  (1) by allowing the 911 call to be played at trial; (2) by admitting an audio recording containing evidence of his prior, uncharged bad acts; (3) by denying the defense counsel the opportunity to cross-examine the Commonwealth's expert witness; and (4) by excluding testimony from a defense witness and prohibiting Lock from making a complete record of testimony by avowal.

The proper standard for review of evidentiary rulings is an abuse of discretion.  *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000).  "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."  *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).  However, when the evidentiary issues relate to a claimed violation of the Sixth Amendment, "we review the district court's rulings de novo."  *United States v. Robinson*, 389 F.3d 582, 592 (6th Cir. 2004).  *United States v. Gibson*, 409 F.3d 325, 337 (6th Cir. 2005).

First, Lock contends that the admission of the 911 call violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Under the Confrontation Clause, a criminal defendant has a right to confront and cross-examine witnesses against him. Thus, the Confrontation Clause prohibits the admission of testimonial statements of a witness who did not testify at trial unless he was unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 50-57, 124 S. Ct. 1354, 1364-68, 158 L. Ed. 2d 177 (2004). Such statements cannot be introduced even if they would be otherwise admissible under an exception to the hearsay rules. *Id.* at 51-52, 124 S. Ct. at 1364.

However, the Confrontation Clause does not apply to nontestimonial statements. *Davis v. Washington*, 547 U.S. 813, 821, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 822, 126 S. Ct at 2273. Therefore, if a Court determines the circumstances of a situation is an emergency in progress, the statements made qualify as nontestimonial. *Heard v. Commonwealth*, 217 S.W.3d 240, 244 (Ky. 2007).

In *United States v. Johnson*, 509 F. App'x 487 (6th Cir. 2012), the Sixth Circuit applied this rule in the context of a 911 call. The Court held that a

caller's statements made to the 911 operator's questions were nontestimonial because the primary purpose of the questioning was "to enable police assistance in response to an ongoing emergency." *Id.* at 494. Since the statements were nontestimonial, the Court concluded that their admission did not violate the defendant's rights under the Confrontation Clause. *Id.* Likewise, we conclude that the primary purpose of the caller's statements in this case was to alert the 911 operator of the ongoing emergency – the dangerous condition caused by the speeding motorist. Therefore, we conclude that the 911 call was nontestimonial and not subject to the Confrontation Clause. *See also McDonald v. Commonwealth*, 436 S.W.3d 534, 538 (Ky. App. 2013).

We further conclude that the district court properly admitted the 911 call under KRE[3] 803(1), which provides that "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is not hearsay. The caller described the event to the 911 dispatcher immediately after perceiving it, and also identified the location and described the car involved. The Commonwealth did not introduce the 911 call to establish either that Lock was driving under the influence or that he was speeding. Rather, the Commonwealth introduced the call only to outline the events

---

[3] Kentucky Rules of Evidence.

-10-

leading up to Trooper Adkison's decision to stop the vehicle. Thus, we conclude that the 911 call met the present-sense impression exception to the hearsay rule under KRE 803(1).

Second, Lock maintains that the district court abused its discretion admitting an audio recording containing KRE 404(b) evidence. At trial, the Commonwealth introduced an audio recording made by Trooper Adkison during his twenty-minute observation period of Lock. In the recording, Lock stated that he had been arrested for a DUI ten or twelve years ago. Lock further stated that he blew a .02 but was still arrested and made to spend a night in jail. However, Lock was not charged with any crime at that time.

Lock contends that the Commonwealth failed to provide proper notice of its intent to use the statement, as required by KRE 404(c). The record clearly establishes that the Commonwealth provided advance notice of its intent to use the recording. In fact, Lock was aware of the recording and its contents since it was admitted during the suppression hearing.

Lock primarily argues that the recording improperly allowed the jury to consider his prior arrest for DUI, suggesting a propensity to commit the crime or as a basis to question his credibility in the current case. The Commonwealth argued, and the circuit court agreed, that Lock's statements do not constitute

-11-

evidence of another crime. Rather, Lock simply admitted to a prior arrest for DUI which did not result in a charge or conviction.

However, the plain language of KRE 404(b) prohibits the introduction of "other crimes, wrongs, or acts" "to prove the character of a person in order to show action in conformity therewith." The rule is not limited only to charged crimes or matters resulting in a conviction. The lack of any charges resulting from the prior arrest tends to mitigate the prejudice arising from its admission. But we cannot say that the evidence clearly falls outside of the scope of KRE 404(b).

The controlling question is whether the Commonwealth provided a proper reason for admission of the statement. When the relevancy inquiry relates to whether the evidence is admissible for a "proper purpose" under KRE 404(b)(1), *i.e.*, some purpose other than to prove bad character or propensity, this is a mixed issue of fact and law. *Matthews v. Commonwealth*, 163 S.W.3d 11, 33 (Ky. 2005). Therefore, whether the purpose for which the evidence is offered is a "proper purpose" is a question of law that is reviewed *de novo*. *Id.* If the evidence falls within one of the "other purpose" exceptions expressly listed in KRE 404(b)(1), *i.e.*, motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident, the resolution is obvious. *Id.* However, the listed "other purpose" exceptions are illustrative, not exhaustive.

In *Hoff v. Commonwealth*, 394 S.W.3d 368 (Ky. 2011), the Kentucky Supreme Court held that the Commonwealth may not offer evidence of other crimes or bad acts for the purpose of proving the defendant's character or propensity for criminal activity. *Id.* at 381. The Court further noted that KRE 404(b) permits the introduction of such evidence for another purpose, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," or if the uncharged bad act is "inextricably intertwined" with the evidence of the charged crimes. *Id.* Should the Commonwealth wish to demonstrate that such evidence is admissible for another proper purpose, it has the burden of making that showing. *Id.*

In this case, the Commonwealth argues that the entire recording was relevant as evidence of Lock's impairment. We are concerned that the Commonwealth did not make this argument when this matter was before the district court. Since the Commonwealth bore the burden of showing a proper purpose, we are not at liberty to consider the Commonwealth's arguments in this matter. Rather, that is a matter for the district court to determine upon remand. Upon remand, if the Commonwealth demonstrates that the portions of the audio recording containing Lock's statements about his prior arrest were relevant to a proper purpose under KRE 404(b) or were inextricably intertwined with the relevant portions of the audio recording, then the district court should allow those

-13-

portions of the recording to be played for the jury.  Otherwise, these portions of the

audio recording should be redacted.

Third, we will address whether the district court violated Lock's Sixth

Amendment rights by denying the defense counsel the opportunity to cross-

examine the Commonwealth's expert witness regarding a learned treatise.[4]  Under

KRE 803(18), known as the learned treatise rule,

> To the extent called to the attention of an expert witness
> upon cross-examination or relied upon by the expert
> witness in direct examination, statements contained in
> published treatises, periodicals, or pamphlets on a subject
> of history, medicine, or other science or art, established
> as a reliable authority by the testimony or admission of
> the witness or by other expert testimony or by judicial
> notice.  If admitted, the statements may be read into
> evidence but may not be received as exhibits.

Statements from such a document are not excluded by the hearsay

rules, even though the declarant is not available as a witness, when these

statements are used in questioning an expert witness, either on direct or cross, if

the statements are established as a reliable authority either by the witness, other

expert testimony, or by judicial notice.  *Stokes v. Commonwealth*, 275 S.W.3d 185,

---

[4] Lock also complains that the district court refused to allow him to introduce the treatise by avowal.  The purpose of an avowal is to permit a reviewing court to have the information needed to consider the ruling of the trial court.  When there is sufficient evidence before the reviewing court regarding the issue, an avowal is unnecessary.  *Underhill v. Stephenson*, 756 S.W.2d 459, 461 (Ky. 1988).  Under the circumstances presented in this case, we find that Lock's objection was sufficient to preserve the issue without the need for introducing the evidence by avowal.

188 (Ky. 2008).  The judicial notice used in this rule goes only to whether the document is a reliable authority, not that the statements read are adjudicative facts. *Id*.  As always, the weight of the authority must be determined by the trier of fact. *Id.*  While courts have not set out what kind of preliminary evidence is necessary to establish the authoritativeness requirement, proof of mere publication or existence is insufficient to satisfy the requirement. [5]

In an unpublished case, this Court held that cross-examination was improper because the expert witness could not authenticate and establish the introduced material as a reliable authority because she was unfamiliar with it.  *Ky. Guardianship Adm'rs, LLC v. Baptist Healthcare Sys. Inc.*, No. 2017-CA-000665-MR, 2019 WL 1967122, at *12 (Ky. App. May 3, 2019).  Likewise, in this case, the expert witness in this case stated that he knew of the author but was unfamiliar with the article or area of study.  Lock did not attempt to establish the article's reliability through any other expert testimony.  Accordingly, the district court did not abuse its discretion by denying defense counsel the opportunity to cross-examine the Commonwealth's expert witness regarding a learned treatise.

And fourth, Lock argues that the district court erred by excluding testimony from a defense witness and prohibiting Lock from making a complete

---

[5] ROBERT G. LAWSON, THE KENTUCKY EVIDENCE BOOK, § 8.85[2][a] (LexisNexis 2020 ed.).

record of testimony by avowal. Lock sought to introduce the testimony of Barry Jones to show bias on the part of Trooper Adkison. As Jones's attorney, Lock threatened to sue Trooper Adkison and had made a complaint to Trooper Adkison's supervising lieutenant regarding a domestic situation involving Jones. The district court concluded that Jones's testimony was not relevant to the issue of bias and declined to allow Lock the opportunity to introduce the evidence by avowal.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. Generally speaking, "[a]ll relevant evidence is admissible. . . . Evidence which is not relevant is not admissible." KRE 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403.

It is well-settled that "the trial court enjoys discretion to limit cross-examination of an adverse witness, even when the limitation is placed on evidence of bias: the Sixth Amendment 'does not prevent[s] a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness.'" *Davenport v. Commonwealth*, 177 S.W.3d 763, 768 (Ky. 2005) (citing

-16-

*Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435, 89 L. Ed. 2d 674 (1986)). In *Davenport*, the Kentucky Supreme Court explained the boundaries of the trial court's discretion in limiting cross-examination. "So long as a reasonably complete picture of the witness's veracity, bias and motivation is developed, the judge enjoys power and discretion to set appropriate boundaries." *Id.* (citing *Commonwealth v. Maddox*, 955 S.W.2d 718, 721 (Ky. 1997)). Thus, the trial court does not err in limiting evidence of potential bias when there is a lack of credible evidence supporting the inference. *Id.* at 769.

In this case, the district court did not abuse its discretion in excluding the testimony of Barry Jones. Lock suggests the evidence establishes that Trooper Adkison had a bias against him, thus providing Trooper Adkison a motive to fabricate evidence against him. Yet, Lock does not offer any examples of fabricated evidence. Furthermore, Trooper Adkison testified that he had no knowledge of Lock's filing a complaint against him, thus excluding the alleged reason for bias. Any limited relevance of the testimony to the question of bias was outweighed by the risk of confusing the jury with collateral matters.

Finally, Lock argues the district court erred by not striking three jurors for cause. Lock concedes that this issue is unpreserved. Moreover, since we are remanding this matter for a new trial, the denial of the motion to strike these three jurors is moot. Therefore, we decline to address the issue further.

-17-

## IV.   CONCLUSION

Accordingly, we reverse the circuit court judgment in part and direct the circuit court to enter a new judgment vacating the conviction in this case and remanding this matter for a new trial consistent with this Opinion.

ALL CONCUR.


BRIEF FOR APPELLANT:

Travis B. Lock
Bowling Green, Kentucky

Thomas E. Clay
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Philip W. Moore
Special Assistant Attorney General
Elizabethtown, Kentucky