RENDERED:  MARCH 14, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1486-MR

BRIAN MADDEN                                                                APPELLANT

v.       APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE LARRY ASHLOCK, JUDGE
ACTION NO. 23-CR-00214

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, EASTON, AND L. JONES, JUDGES.

EASTON, JUDGE:  The Appellant, Brian Madden ("Madden"), was convicted after a jury trial of a third-degree assault of Kentucky State Police ("KSP") Trooper Travis Dalton ("Trooper Dalton").  Madden argues the circuit court erred in:  (1) limiting cross-examination of Trooper Dalton by preventing a question about an ethics test score during his police training; (2) denying his motion for a directed verdict; and (3) allowing the Commonwealth to ask him whether his testimony was that the state troopers had lied on the stand.  We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

Because we must determine the correctness of a directed verdict denial, we will outline the evidence presented. The events leading to Madden's arrest and the third-degree assault charge were not captured on any dashboard camera or body-camera. The circuit court and jury had to evaluate the sometimes-conflicting testimony of the witnesses about the events of the traffic stop at issue.

At about 1 a.m. on February 5, 2023, Madden was driving home when he was pulled over for speeding by KSP Trooper Robert Moster ("Trooper Moster"). Although Madden conceded that he might have been speeding, he argued about how fast he was going. The jury convicted Madden of going 86 miles per hour ("mph") in a 55 mph zone, consistent with the radar reading reported by Trooper Moster.

Madden had finished a training shift at the Cheddar's Scratch Kitchen restaurant on North Dixie Highway (US 31-W) between Elizabethtown and Radcliff. He stayed to have some food and drinks with his co-workers. He was driving toward Radcliff to go home when Moster pulled him over. Moster smelled alcohol and suspected Madden of driving under the influence ("DUI"). Madden admitted that he had slowly drank "two beers."

Trooper Dalton arrived to assist Trooper Moster. Trooper Dalton said he observed Madden's red, watery eyes and also smelled alcohol. Trooper Dalton

asked Madden to perform field sobriety tests. Madden refused claiming medical issues. Madden also did not perform a breathalyzer test after his arrest, although a portable breath test at the arrest scene showed a level of .147.

With their observations, the admission of drinking, and the portable breath test reading,[1] the Troopers had probable cause to arrest Madden for DUI. Madden ultimately would be acquitted of the DUI charge. Had Madden been convicted, the DUI would have been a felony due to Madden's three prior DUI convictions in three different states in the preceding ten years.

Upon arrest, the Troopers asked Madden to place his hands behind his back and put out the cigarette he was smoking. The cigarette was removed either by Madden himself or one of the Troopers, and the Troopers said that Madden then tried to pull away from them. Trooper Dalton "assisted" Madden to the ground by a leg-sweep maneuver. Madden would be similarly "assisted" again as the Troopers took him to a police cruiser.

The Troopers led Madden toward Trooper Dalton's police cruiser. Trooper Dalton testified that, with a backward motion, Madden kicked or attempted to kick Trooper Dalton multiple times. Trooper Dalton remembered that

---

[1] While a portable breath test reading is not admissible against a defendant at a trial, it is evidence which a court may consider in evaluating probable cause for an arrest. *Greene v. Commonwealth*, 244 S.W.3d 128, 134 (Ky. App. 2008).

one of the kicks contacted his thigh, but there was no injury. Trooper Moster testified that he saw Madden kicking at Trooper Dalton.

After Madden was again taken to the ground, Trooper Dalton remembered Madden asking why he was on the ground again. When Trooper Dalton explained that it was because of his kicking, Madden said something to the effect of "fuck yeah I tried to kick you, you damn right, bitch." Madden denied this statement.

Madden instead remembers Trooper Dalton using the word "animated" to describe Madden, and Madden insisted this was just a code word for "gay."[2] Madden further remembered Trooper Dalton saying that he could have just called him a "fag." Trooper Dalton did not recall using the word animated and flatly denied the slur. Despite the differences in the remembered conversation, Madden admitted that at some point he told Trooper Dalton: "well, now I know why your wife fucks your best friend."

It took both Troopers to get Madden into the cruiser. Madden admits that he was screaming and kicking after he was placed in the cruiser. Trooper Moster, who followed Trooper Dalton to the Hardin County Detention Center ("HCDC"), could see Trooper Dalton's cruiser shaking because of Madden's

---

[2] We are cited to no slang dictionary or other resource which would confirm this recognized use of the word animated.

kicking. Madden admits that he was trying to break the window he was kicking. The Commonwealth also introduced into evidence Trooper Dalton's calls to radio dispatch, during which Madden could be heard cursing and screaming in the background.

Once Madden arrived at the HCDC, he was still yelling and cursing. The events at the HCDC were recorded, but without audio, which might have provided important context to the actions seen. Without the audio, all the witnesses who commented on the video had to try to remember who said what and when. When Madden first arrived at the HCDC, his handcuffs were removed.

What also can be seen is Madden initially being seated on a bench by a deputy jailer wearing what were described as taser gloves. Madden, who is 6'3" tall and then weighed 250 pounds, subsequently got up from this seated position and approached where Deputy Jailer Gordon ("Gordon") and Trooper Dalton were seated across the room. Madden remembers being told by Gordon to sit back down, and he complied. Throughout the video it is apparent that Madden is not short on words. In a later recorded phone call with his brother, Madden conceded that his "mouth" had been part of the interaction.

All agree that Madden then asked to call an attorney. Madden came across the room with permission. A phone book was provided on the other side of the small table where Trooper Dalton was sitting.

There was a point during this exchange when Madden is seen starting to go to the side of the small table to where Trooper Dalton was seated. Trooper Dalton explained that he would have to dial a number. Trooper Dalton believed from what he could see that Madden was trying to call someone other than an attorney. Madden flipped the phone book over so that Trooper Dalton could not see it. At this point, Madden had the phone receiver in his hand. Madden also admits that he told Trooper Dalton at around this time that "I'm going to sue the shit out of you."

At this point, Gordon was seated in front of the small table and to Madden's left. Gordon suddenly gets up and pushes Madden across the small room and against the opposite wall. Gordon can be seen with his forearm against Madden's throat. Trooper Dalton remembered hearing Gordon call Madden a "fucking faggot." This would not be the only homosexual slur Madden remembers from his time at HCDC.

Trooper Dalton explained that no one stopped Gordon because it happened so quickly. Trooper Dalton was not certain if Gordon's shoving of Madden was "justified or not at the time." Both troopers prepared and submitted memoranda regarding Deputy Gordon's conduct to their sergeant for potential further action.

As part of his defense, Madden claimed that the assault allegation against him was fabricated as part of a scheme to help cover-up or otherwise lessen the consequences of the events at the HCDC. Madden repeatedly described how he was "baited" by verbal comments, that he was discriminated against because he was gay, and that the force used against him by Gordon was a "hate crime."[3] The jury repeatedly saw the HCDC video and heard the testimony of witnesses, all of whom described those events.

The jury nonetheless convicted Madden of third-degree assault and fixed his sentence at 2.5 years. This appeal follows. We will provide further references to the record and statements of the applicable standards of review as we address Madden's three claims of error.

## ANALYSIS

### CROSS-EXAMINATION OF TROOPER DALTON

Madden's first claim of error is that the circuit court denied him his right under the Sixth Amendment and Fourteenth Amendment to fully cross-examine Trooper Dalton regarding his police training and specifically an ethics test

---

[3] The record does not reveal whether any criminal or civil action resulted from the events at the HCDC. Pursuant to Supreme Court Rule 4.300 Rule 2.10(A), presiding and reviewing judges may not comment on potential claims yet to be decided such as by expressing an opinion that a justified or unjustified use of force occurred or by praising or condemning the events. With respect to this case against Madden, the events were presented only as part of the defense's credibility argument of a motive to lie about the earlier events involving Madden and Trooper Dalton.

score from a particular training course. To give proper context to this claim, we first summarize the entirety of the cross-examination on the subject of training and ethics.

Madden's counsel asked Trooper Dalton about the Code of Ethics applicable to him. Trooper Dalton then answered specific questions about that code. He agreed with Madden's counsel that, as a Trooper, he was to exercise self-restraint, perform his duties without prejudice, and not use unnecessary force. Madden's counsel did not by further questions indicate Trooper Dalton was incorrect in any of these answers.

Madden's counsel then shifted to asking about Trooper Dalton's performance on training tests. Counsel pointed out that Trooper Dalton had "aced" or obtained perfect scores of 100% on tests about investigative techniques as well as stress and wellness. But then counsel asked if Trooper Dalton's lowest testing score was on "Ethical Policing in Contemporary Times." Trooper Dalton did not remember any of his specific scores from these trainings, and counsel offered to refresh his memory with his transcript.

At this point, the Commonwealth objected, in part because they had never seen this information in any reciprocal discovery, but they also questioned the propriety of getting into specifics of test scores. The circuit court did not permit further questions about the ethics score pointing out that there was no offer

of any explanation to give any context or significance to the score as it might apply to this case.  The circuit court believed that evidence of the score without such additional information would confuse the jury in its role of assessing the witness's credibility.

The transcript is not in the record by avowal or otherwise.  We do not have the test score that counsel wanted to introduce.  We do not know if the score was 99% or something lower,[4] since all we might surmise is that it was lower than the others mentioned, which were perfect scores.  We do not know if the score was considered as a passing or otherwise acceptable score.

To preserve the objection, Madden was required to comply with Kentucky Rules of Evidence ("KRE") 103(a)(2).  When evidence is excluded by the court, an offer of proof must be made.  For example, outside the presence of the jury, Trooper Dalton could have been further questioned, and the transcript made part of the court record for appeal purposes.  *See Wood v. Commonwealth*, 432 S.W.3d 726, 728 (Ky. App. 2014).

"In Kentucky, the trial court's rulings concerning limits on cross-examination are reviewed for abuse of discretion."  *Davenport v. Commonwealth*, 177 S.W.3d 763, 771 (Ky. 2005) (citing *Nunn v. Commonwealth*, 896 S.W.2d 911,

---

[4] We do hear the judge say 77% at one point, but we cannot tell for certain if he gave that as a hypothetical or was reciting one of the actual scores on the transcript.

914 (Ky. 1995)). "The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound reasonable principles." *Penner v. Penner*, 411 S.W.3d 775, 779-80 (Ky. App. 2013) (citation omitted). Trial courts enjoy broad discretion in regulating the cross-examination of witnesses. *Davenport*, *supra*, at 771.

We acknowledge that the right to cross-examine a witness is a fundamental constitutional right, and therefore limitations on that right should be cautiously applied. *Commonwealth v. Maddox*, 955 S.W.2d 718, 720 (Ky. 1997) (citations omitted). "Witness credibility is always at issue and relevant evidence which affects credibility should not be excluded." *Id.* at 721 (citation omitted).

Madden argues the circuit court's ruling on cross-examining Trooper Dalton about the ethics score impaired his defense. Madden asserts Trooper Dalton's credibility was a central issue in the case, and "a police officer with poor ethics would be more likely to falsify a report to support a spurious charge." There can be a fine line between information legitimately relevant to credibility and a general character attack. Neither Madden nor Trooper Dalton's character was a proper issue in this case, only their credibility.

When addressing the scope of cross-examination of a witness, the circuit court must first determine if the evidence sought by the proposed cross-examination is relevant pursuant to KRE 402. *Davenport*, *supra*, at 772. If

relevant, the court must then balance the probative value of the cross-examination against proper reasons to exclude it under KRE 403, such as undue delay, confusing the issues, or misleading the jury. *Id.* The Kentucky Supreme Court has recognized the following:

> [A] connection must be established between the cross-examination proposed to be undertaken and the facts in evidence. A defendant is not at liberty to present unsupported theories in the guise of cross-examination and invite the jury to speculate as to some cause other than one supported by the evidence. If it were otherwise, defendants could always present some far-fetched theory on the hope that some juror might be taken in by it. In our view, the discretion of the trial court in this regard may be properly exercised by reference to KRE 403 which permits the exclusion of evidence which might be otherwise relevant on grounds that confusion of the issues or misleading the jury may result.

*Maddox*, *supra*, at 721.

While an officer's training generally may be relevant in assessing credibility, any probative value of Trooper Dalton's specific ethics test score is substantially outweighed by undue delay or waste of time, confusion of the issues, and misleading of the jury. Specifically, the circuit court correctly determined that, without any explanation or context behind the scoring system of the test, allowing such cross-examination would confuse the jury in their task of assessing credibility by proper evidence. The circuit court did not abuse its discretion in not permitting

-11-

questioning about a specific training test score. There was no palpable error or harmless error to consider, even if we overlook any lack of preservation.

## DIRECTED VERDICT ON ASSAULT CHARGE

This case was about an assault charge against Madden, which Madden expanded by his credibility defense into an assault allegation against Gordon. We note a well-established rule of law: "Opprobrious words or epithets do not justify an assault, but are competent in evidence in mitigation of punitive damages." *Johnson v. Tucker*, 383 S.W.2d 325, 326 (Ky. 1964) (quoting *Lambert v. Corbin*, 239 S.W. 453, 455 (Ky. 1922)). That rule works both ways. Our task in *this* case is to evaluate the directed verdict motion on the third-degree assault charge against Madden.

Madden argues the circuit court erred by denying his motion for directed verdict on the third-degree assault charge as the Commonwealth's evidence was insufficient to convict him of that offense. Under Kentucky Revised Statutes ("KRS") 508.025(1)(a)1., a person is guilty of third-degree assault when he intentionally causes or *attempts* to cause physical injury to a state, county, city, or federal peace officer.

At the close of the Commonwealth's case, Madden moved for a directed verdict on the third-degree assault charge, arguing there was insufficient proof from Trooper Dalton's testimony that his kicks caused physical injury. The

-12-

circuit court denied Madden's motion, explaining it agreed with Madden there had been no proof of a physical injury but there had been sufficient proof that Madden had attempted to cause physical injury with his kicks. Following Madden's testimony, he renewed his motion for directed verdict on the same grounds, which also was denied.

The directed verdict standard was established in *Commonwealth v. Benham*:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

816 S.W.2d 186, 187 (Ky. 1991). "So long as the Commonwealth produces more than a mere scintilla of evidence to support the charges, a defendant's motion for directed verdict should be denied." *Taylor v. Commonwealth*, 617 S.W.3d 321, 324 (Ky. 2020). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Benham*, *supra*, at 187.

Madden asserts the following: "While it might appear on the surface that testimony that Mr. Madden kicked Trooper Dalton is sufficient to show, even without an injury, that he attempted to cause physical injury, no reasonable juror could have found Dalton's testimony credible." In support of his position, Madden states he was taller and larger than Trooper Dalton and would have likely injured the trooper if he had actually tried to kick him.

A similar argument was made in *Washington v. Commonwealth*, 6 S.W.3d 384 (Ky. App. 1999), where the defendant argued he was entitled to a directed verdict for third-degree assault against officers because he was a "large man" – *i.e.*, the officers' injuries must have been accidental because if he had intended to assault the officers, they would have received more than scratches. The Court concluded the officer's testimony that the defendant "struck or shoved his chest" and that he experienced chest soreness for a few days thereafter, along with his testimony that the defendant attempted to strangle him, was sufficient evidence to defeat a motion for directed verdict. *Id.* at 386.

In this case, the jury heard evidence that Trooper Moster saw Madden kick at Trooper Dalton but was not sure if the kicks connected. Trooper Dalton testified Madden reverse-kicked him in the thigh and attempted to kick him several more times. Madden admitted he was later kicking while in the police cruiser in an attempt to cause property damage. Trooper Dalton testified Madden made a

-14-

statement to the effect of "fuck yeah I tried to kick you, you damn right, bitch."

The jury was entitled to believe that this admission was made.

The jury could reasonably piece together the troopers' testimony with Madden's belligerent attitude to conclude Madden attempted to cause physical injury to Trooper Dalton by kicking him. The Commonwealth produced more than a mere scintilla of evidence to support the charge against Madden. We believe the evidence of Madden at least attempting to cause physical injury was sufficient to induce a reasonable juror to believe beyond a reasonable doubt that Madden was guilty. The circuit court did not err in denying Madden's motion for directed verdict.

## *MOSS* VIOLATION

Finally, Madden alleges the circuit court erred by allowing the Commonwealth to ask him whether his testimony was that the troopers had lied on the stand in violation of *Moss v. Commonwealth*, 949 S.W.2d 579 (Ky. 1997).

> A witness should not be required to characterize the testimony of another witness, particularly a well-respected police officer, as lying. Such a characterization places the witness in such an unflattering light as to potentially undermine his entire testimony. Counsel should be sufficiently articulate to show the jury where the testimony of the witnesses differ without resort to blunt force.

*Id.* at 583. The jury, not witnesses or attorneys, decides who, if anyone, is lying.

For completeness, we will set out the entire fifteen second interaction on this subject:

Prosecutor: So, is it your testimony today that the police officers got up here and lied on the stand?

Madden: Yes.

Prosecutor: That's what you want this jury to believe?

Madden: Yes.

Prosecutor: That everything they are saying is a lie?

Defense Counsel: Objection. Improper question.

Judge: I'll overrule it, but move on.

The pending question was not answered or repeated. The prosecutor moved on.

Madden's attorney waited until the question was asked three times to object. Once an objection was stated, the improper questioning stopped, and no further answer was given. Objections are required to be timely. KRE 103(a)(1). By the time defense counsel spoke up, Madden had already and eagerly answered "yes" twice. Madden's opinion was consistent with his overall credibility argument.

If we consider the objection unpreserved, the *Moss* violation is not palpable error. *Parker v. Commonwealth*, 482 S.W.3d 394, 406 (Ky. 2016). If we give the benefit of the doubt and consider the objection timely, the *Moss* violation error was also harmless in the circumstances of this case. "A non-constitutional

-16-

evidentiary error such as this one is harmless if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *Harris v. Commonwealth*, 384 S.W.3d 117, 125 (Ky. 2012), *as modified on denial of reh'g* (Dec. 20, 2012) (citation omitted).

## CONCLUSION

The circuit court did not abuse its discretion by not allowing cross-examination regarding Trooper Dalton's ethics test score. The court correctly denied Madden's motion for directed verdict on the third-degree assault charge as there was sufficient evidence to induce a reasonable juror to believe Madden's guilt beyond a reasonable doubt. Although a *Moss* violation occurred, this was not an error requiring reversal. The judgment of the Hardin Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Aaron Reed Baker
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky