RENDERED: JANUARY 16, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1035-MR

FREDDIE SCALF, SR.                  APPELLANT


APPEAL FROM LAUREL CIRCUIT COURT
v.            HONORABLE GREGORY LAY, JUDGE
ACTION NO. 23-CR-00263


COMMONWEALTH OF KENTUCKY           APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND A. JONES, JUDGES.

JONES, A., JUDGE: Freddie Scalf appeals from the judgment sentencing him to a term of fifteen years' imprisonment following his convictions at his jury trial. After our review of the facts and the law, we affirm the judgment.

## I. BACKGROUND

On January 30, 2023, law enforcement in Laurel County apprehended Robert Nantz, an admitted drug addict, for possession of methamphetamine. In

exchange for leniency in his criminal case, Nantz agreed to work as a confidential informant (CI) for Detective Jacob Miller of the Laurel County Sheriff's Office. That evening, Detective Miller sent Nantz to Scalf's residence for a controlled purchase of illegal drugs. In preparation for this task, police officers searched Nantz and his vehicle to ensure he had no money or contraband of his own, and Detective Miller equipped Nantz with a video recording device. Detective Miller then provided Nantz with $150.00 to purchase an "eight ball,"[1] or approximately 3.5 to 4 grams of methamphetamine from Scalf. By utilizing GPS and remote access to the video recording device, Detective Miller was able to track Nantz to Scalf's home and watched live video of the drug transaction on his cell phone. The detective watched Scalf use a scale to weigh a crystalline rock in a cup, place the substance in a plastic bag, and then sell it to Nantz.

After the transaction, Nantz returned to his vehicle, where he sat in the dark for approximately three minutes. The recording device provided by Detective Miller captured "sounds of rustling," but did not show video of anything that may have transpired inside the vehicle. (Appellant's Brief at 3.) When Nantz returned to Detective Miller, he gave him a small bag of a crystalline substance which later tested positive as methamphetamine.

---

[1] An "eight ball" is slang for "an eighth of an ounce of a drug[.]" *Eight ball*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/eight%20ball (last visited Dec. 17, 2025).

Based on this incident, Scalf was indicted for first-degree trafficking in a controlled substance (first offense)[2] and being a first-degree persistent felony offender (PFO).[3] During the one-day trial, the Commonwealth presented testimony from Nantz, Detective Miller, the evidence custodian at the Laurel County Sheriff's Office, and personnel from the Kentucky State Police (KSP) crime laboratory. The evidence custodian and the forensic laboratory supervisor both described the chain of custody of the drug purchased from Scalf, and the forensic specialist identified the tested drug, a white crystalline substance, as methamphetamine.

Scalf presented no testimony in his defense and instead attempted to persuade the jury, through cross-examination of the Commonwealth's witnesses, that the substance tested by the KSP laboratory was not the same substance Nantz had purchased. Scalf emphasized the discrepancy between the weight of the substance sold to Nantz and the weight of the substance tested at the KSP crime laboratory. Detective Miller testified that the evidence bag containing the plastic bag and substance weighed approximately seven grams. Because the evidence bag itself weighs about four grams, this meant the plastic bag with the substance

---

[2] Scalf was originally charged with trafficking more than 2 grams of methamphetamine under Kentucky Revised Statute (KRS) 218A.1412(1)(b), a Class C felony. However, before trial, the Commonwealth moved to amend this count to trafficking less than 2 grams of methamphetamine under KRS 218A.1412(1)(e), which is a Class D felony.

[3] KRS 532.080.

weighed about three grams; however, the KSP forensic specialist testified that the tested substance weighed 1.989 grams. Scalf also closely cross-examined Nantz about what he might have been doing in his darkened vehicle for three minutes. Nantz admitted that he cut some of the excess plastic from the bag in order to create a bindle, but he insisted he did not tamper with the substance in the bag itself. Despite Scalf's efforts, the jury found him guilty of trafficking methamphetamine and of being a PFO. The jury recommended a sentence of five years' imprisonment enhanced to a term of fifteen years by virtue of the PFO. The trial court sentenced Scalf in accordance with the jury's recommendation. This appeal followed.

## II. ANALYSIS

Scalf presents two issues on appeal. First, he argues the trial court erroneously admitted the laboratory report identifying the tested substance as methamphetamine. Second, he argues the trial court erred when it precluded cross-examination of Nantz regarding his diversion agreement with the Commonwealth. We consider each issue in turn below.

In his first argument, Scalf argues that the trial court's admission of the laboratory report was erroneous because "[t]he tested powder-like substance is not the rock-like substance Scalf gave Nantz." (Appellant's Brief at 1.) As an appellate court, we review a trial court's rulings on evidentiary issues for abuse of

-4-

discretion. *Saxton v. Commonwealth*, 671 S.W.3d 1, 11 (Ky. 2022). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Prior to his trial, Scalf moved the trial court *in limine* to exclude the methamphetamine, based on a discrepancy in its weight at the time of the purchase and the recorded weight at the KSP laboratory. Scalf's motion asserted "the substance purchased and the substance tested are not the same[.]" (Record (R.) at 86.) Continuing his argument, Scalf argued the Commonwealth had failed to show a proper chain of custody for the suspected methamphetamine, quoting *Harrod v. Commonwealth*, 552 S.W.2d 682 (Ky. App. 1977), for the proposition that, in drug cases, "[a] complete chain of custody of this evidence tracing its possession from the time it was obtained from the defendant to its final custodian must be established or the samples may not be admitted." *Id.* at 684.

Scalf reiterated and extended his motion *in limine* in a bench conference during his trial based on other factors elicited from the evidence. In his argument, Scalf not only focused on the purported weight discrepancy, but he also asserted Nantz had the opportunity to switch the substance, consume some of it, or otherwise tamper with it while he sat for three minutes in his darkened vehicle. Scalf also pointed out that the substance in the undercover video resembled a rock,

while the substance at the laboratory appeared to be a crystalline powder. After listening to the arguments of counsel, the trial court ultimately agreed with the Commonwealth that there was a sufficient chain of custody and that Scalf's arguments went to the weight or credibility of the evidence but not to its admissibility, citing *Penman v. Commonwealth*, 194 S.W.3d 237, 244 (Ky. 2006).

KRE[4] 901(a) states "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Although Scalf correctly asserts that fungible items, such as drug samples, require a stronger foundation for admissibility pursuant to *Harrod*, it is also true that "a perfect chain of custody is not required." *Saxton*, 671 S.W.3d at 11 (citing *Ross v. Commonwealth*, 455 S.W.3d 899, 912 (Ky. 2015)). "Instead, the proponent need only show that the reasonable probability is that the evidence has not been altered in any material respect." *Ross*, 455 S.W.3d at 912 (internal quotation marks and citations omitted).

The trial court did not abuse its discretion in allowing the introduction of the drug evidence and the concomitant KSP laboratory report. First, "[w]here the state's evidence otherwise establishes to a reasonable probability that the substances introduced at trial are the same as the substance seized, a discrepancy in

---

[4] Kentucky Rules of Evidence.

the weight of the substances goes to the credibility of the evidence, not its admissibility." *Penman*, 194 S.W.3d at 244 (internal quotation marks and citations omitted), *overruled on other grounds by Rose v. Commonwealth*, 322 S.W.3d 76 (Ky. 2010). Discrepancies in the weight of the sample may be adequately explained by "differences in weighing techniques." *Id*. at 245. This drug evidence was weighed at least three times – once by Scalf during the transaction, once by law enforcement, and once by the KSP forensic specialist. Detective Miller testified that he did not know how accurate Scalf's scale was, or how Scalf's inclusion of the cup holding the substance may have affected the weight.

In addition, despite Scalf's conclusory assertions as to what Nantz may have done in his darkened vehicle with the purchased methamphetamine, "the mere possibility that someone, somewhere, 'pinched' some of the [drug] is insufficient to prove the actual substances taken from Appellant were not accurately analyzed as to what remained." *Id.* at 246. Finally, Scalf's assertions regarding the change in the appearance of the drug were also readily explained by Detective Miller's testimony during the trial. When questioned, he explained that methamphetamine rock crystals will chip into a powder inside a bag when the shards rub together. Taking these factors into consideration, the trial court ruled the chain of custody had been reasonably established, and we discern no abuse of discretion in the trial court's decision to admit the evidence.

For his second issue on appeal, Scalf contends the trial court improperly granted the Commonwealth's motion *in limine* which disallowed him from cross-examining Nantz about a diversion agreement between Nantz and the Commonwealth in a separate case. Scalf asserts that the credibility of the evidence in this case depended on the credibility of Nantz's testimony, and he argues that Nantz's diversion agreement meant that he was motivated to testify favorably for the prosecution. Moreover, Scalf claims that Nantz was also motivated to perjure himself regarding his activities in the darkened vehicle, because an admission that he had tampered with the substance in some way could have led to revocation of his diversion. Therefore, according to Scalf, "the trial court's limitation prevented the jury from seeing a complete picture of Nantz and the facts influencing his testimony." (Appellant's Brief at 15.)

"The right to cross-examine witnesses is . . . [a]n essential aspect of the Sixth Amendment Confrontation Clause . . . [b]ut that right is not absolute[,]" and "trial courts have broad discretion to impose reasonable limits on such cross-examination[s.]" *Newcomb v. Commonwealth*, 410 S.W.3d 63, 85 (Ky. 2013) (internal quotation marks and footnotes omitted). "So long as a reasonably complete picture of the witness' veracity, bias and motivation is developed, the judge enjoys power and discretion to set appropriate boundaries." *Holt v.*

*Commonwealth*, 250 S.W.3d 647, 653 (Ky. 2008) (quoting *Commonwealth v. Maddox*, 955 S.W.2d 718, 721 (Ky. 1997)).

Here, Scalf asserts that an inquiry into Nantz's diversion agreement would have allowed him to expose Nantz's biases and motivations for perjuring himself. However, the jury heard significant testimony outlining Nantz's motives in this case. Nantz candidly admitted on direct examination that he was a drug addict, that he had been apprehended by law enforcement for drug possession, and that he agreed to act as a confidential informant in hope that the Commonwealth would treat him with leniency. Furthermore, Nantz's diversion agreement took place after this incident in an unrelated case in a different county. "[M]ere participation in a pretrial diversion program, absent any further showing upon which to infer bias, is an insufficient basis for impeachment." *Id*. Scalf asserts that Nantz had a motive to deny tampering with the drug evidence because of his diversion agreement; however, tampering with physical evidence could constitute a criminal act even *without* a diversion agreement,[5] and so the motive to perjure oneself would be there nonetheless.

In short, a cross-examination of Nantz regarding his diversion agreement would not have been relevant and would not have produced a more significant picture of Nantz's motivations than what the jury had already heard.

---

[5] Tampering with physical evidence, KRS 524.100, is a Class D felony.

"[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Davenport v. Commonwealth*, 177 S.W.3d 763, 768 (Ky. 2005) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435, 89 L. Ed. 2d 674, 683 (1986)) (emphasis omitted). Accordingly, the trial court committed no abuse of discretion when it granted the Commonwealth's motion *in limine* regarding Nantz's diversion agreement.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Christopher B. Thurman
Louisville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky